IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ROBERT ALLEN WARD,

        Petitioner,

 vs.                                                                                                  No. CIV 96-470 LH/LFG

JOE WILLIAMS,

        Respondent.

## MAGISTRATE JUDGE'S FINDINGS
## AND RECOMMENDED DISPOSITION[1]

### Findings

    1. This is a proceeding on a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, filed April 9, 1996. Respondent filed his Answer [Doc. 19] on August 23, 1996. Petitioner Robert Allen Ward ("Ward") challenges the judgments and sentences entered by the Eleventh Judicial District Court in State v. Ward, Nos. CR-91-103-1, CR-91-326-1, CR-91-327-1, CR-91-328-1, CR-91-329-1, CR-91-330-1, CR-91-331-1, CR-91-198-3, CR-92-484-1 and Order Revoking Probation as to CR 91-103-1, et al. (County of San Juan, New Mexico). These causes will be referred to hereafter in abbreviated fashion; e.g., "Cause 91-103."

    2. In July 1991, Ward pled guilty to numerous offenses involving burglary, larceny, credit card theft, escape, and trafficking in a controlled substance; other charges against him were dropped.

---

[1] Within ten (10) days after a party is served with a copy of these findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such findings and recommenda-tions. A party must file any objections with the Clerk of the U.S. District Court within the ten-day period allowed if that party wants to have appellate review of the findings and recommendations. If no objections are filed, no appellate review will be allowed.

He received a suspended sentence and was placed on probation. During the probationary period, Ward was again arrested and, on September 8, 1992, he pled guilty to the offenses of Distribution of Marijuana to a Minor, and Felon in Possession. At the time of sentencing for the new offenses, the court revoked Ward's probation, lifted the suspension on his sentence, and ordered him to be incarcerated. Ward's motions for reconsideration of his sentence were denied. He then instituted state habeas proceedings, during which the original sentencing judge, <u>sua sponte</u>, entered a Corrected Judgment and Sentence. Ward's state habeas petition was denied, as was his petition for certiorari to the New Mexico Supreme Court.

3. In earlier proceedings in this federal habeas matter, the district judge adopted the recommendation of the magistrate judge and dismissed the case with prejudice. Petitioner appealed this ruling, and on April 1, 1998, the Tenth Circuit vacated the judgment and remanded the case for further proceedings, indicating its preference that an evidentiary hearing be conducted to determine the exact parameters of the sentences. On May 27, 1998, counsel was appointed for Ward. The court found no reason to hold an evidentiary hearing and ordered briefing, which was completed on January 15, 1999.

4. As grounds for federal habeas review, Ward alleges that the sentencing court impermissibly increased his sentence in violation of the double jeopardy clause after finding that he had violated the conditions of his probation. He also seeks an evidentiary hearing in this matter.

5. Respondent concedes, and this Court finds, that Ward exhausted his available state remedies and the petition is properly before the Court.

6. The facts pertinent to this petition are as follows:

In July, 1991, Ward pled guilty to numerous felonies in eight different causes. He was sentenced orally at that time (Record Proper, Tape 7-1-91), and a written <u>Judgment, Sentence and Order Suspending Sentence</u> (hereafter referred to as "First JS") was filed in the eight causes on September 13, 1991. (Record Proper, v. CR-91-103-1, at 51-64). References to the Record Proper will hereafter be noted as "RP," and references to v. CR-91-103-1 will hereafter be noted as "RP 103."

One of these causes, 91-103, contained eight different counts. The judge sentenced Ward to 18 months on each of the counts and ordered that the sentences on these eight counts be served concurrently. (RP 103, at 52-55). Thus, the total sentence in Cause 91-103 was 18 months. Each of the sentences in the remaining seven causes was specified to run consecutively to the sentence preceding it. (RP 103, at 57, 59-64). The judge suspended all sentences and ordered that Ward be placed on probation. There was no mention of parole. The judge made a handwritten note at the bottom of the First JS stating that, "The gross effect of this sentence is 36 years and 364 days in prison suspended on conditions as stated in favor of 5 years probation . . .." The figure of 36 years, 364 days would have been correct if every count in every cause had been ordered to run consecutively. However, the judge apparently overlooked the fact that within Cause 91-103, he had ordered each of the eight <u>counts</u> to run concurrently with the count preceding it, and within Cause 91-326, he ordered each of the three <u>counts</u> to run concurrently with the count preceding it, even though the sentences on the eight separate <u>causes</u> were to run consecutively.

During the probationary period, Ward committed additional criminal offenses. He again pled guilty, and a sentencing hearing was held on November 2, 1992. In the course of that hearing, the judge sentenced Ward on two counts in the new cause (Cause 92-484) and also sentenced him to a

3

period of imprisonment for violating the conditions of probation. (RP, Tapes 11-2-91(I) and (II)).[2]

The written <u>Judgment, Sentence and Commitment to the Corrections Department as to CR 92-484-1; And Order Revoking Probation as to CR 91-103-1 et al.</u> ("Second JS") was filed on December 14, 1992. (RP, v. CR-92-484-1, at 27-30; this volume of the RP will hereafter be referred to as "RP 484").

The sentences in Cause 92-484 were as follows: On Count I (Distribution of Marijuana to a Minor), four years, including three years for the offense plus one year enhancement as an habitual offender, with a parole period of one year; On Count II (Possession of a Firearm by a Felon), 18 months, with a parole period of one year. At the sentencing hearing on November 2, Ward's attorney requested that the sentences on the two counts in Cause 92-484 run concurrently; however, the judge rejected this request and ordered from the bench that the sentences run consecutively. RP, Tape 11-2-92 (II), at 29.03. However, in spite of this oral statement, the Second JS as written contains no mention of the consecutive or concurrent nature of the sentences on the two counts in Cause 92-484.

At the November 1992 sentencing hearing, as reflected in the Second JS, the judge also revoked Ward's probation on the eight earlier causes and ordered him to serve a term of twelve years' imprisonment to be followed by a two-year period of parole. (RP 484, at 28). It is apparent that the judge continued to believe, mistakenly, that the sentences on the eight counts in Cause 91-103 were ordered to run consecutively, as he drew the twelve-year sentence of imprisonment from that cause alone; he refers to the twelve-year sentence as "the sentence imposed herein as to cause

---

[2] There are three tapes in the Record Proper bearing the date 11-2-92. Ward's sentencing begins at counter 34.23 of Tape 11-2-92, no. 11, designated herein as "Tape 11-2-92 (I)." The sentencing concludes on a second tape for that date, which is unnumbered and will designated herein as "Tape 11-2-92 (II)." The tapes were played on a Sony BM-75 Dictator-Transcriber, which registers about 45.38 counters per tape side.

4

number CR-91-103-1." (RP 484, at 29). If the eight 18-month sentences had run consecutively, the total term in Cause 91-103 would have been twelve years; however, the First JS orders that the sentences run concurrently, thus making a total exposure of only 18 months in that cause. Although the judge states in the Second JS that he is revoking the "suspended sentence and probation" in the earlier causes, (RP 484, at 29), he also states that the sentences imposed in Causes 91-326, 91-327, 91-328, 91-329, 91-330, 91-331, and 91-198, as recited in the First JS "shall remain the same," (RP 484, at 29), implying that the only change occurred in Cause 91-103.

Several years later, after Ward had filed motions for reconsideration (RP 484, at 38, 65), as well as a state habeas corpus petition (Exhibit Q to Respondent's Answer) seeking to correct his sentence, the sentencing court filed a <u>Corrected Judgment, Sentence, and Commitment to the Corrections Department as to CR 92-484-1; And Order Revoking Probation as to CR 92-103 et al.</u> ("Third JS"), on October 13, 1995. (RP 484, at 83-87). In this Third JS, the judge corrected the Second JS to refer to the twelve-year sentence of imprisonment as "the sentence imposed herein as to cause number CR 91-103-1, CR Nos. 91-326, 91-327, 91-328, 91-329, 91-330, 91-331, and CR 91-198." The judge then detailed the exact amount of time to be drawn from each of seven causes, to make up the twelve year sentence on revocation of probation. (RP 484, at 86-87). All time remaining from the First JS, after subtracting the twelve years, was suspended in favor of five years probation. (RP 484, at 86). The judge also noted that, "The two (2) years of parole under CR 91-331-1 shall run concurrently with this five years or probation." (RP 484, at 86-87). Neither the First nor the Second JS explicitly mentioned a period of parole in Cause 91-331, although New Mexico law mandates two years of parole for the offense covered by that cause, as discussed below.

5

Ward alleges that, in the Second JS, the judge changed his sentences for the multiple counts in Cause 91-103 from concurrent to consecutive, thus illegally enhancing his sentence in that cause; that a two-year period of parole was illegally added to the sentence in the Second JS; and that the sentences on the two counts of Cause 92-484 must be presumed to be concurrent since the sentencing court did not specify in the written JS that they be served consecutively.

7. Discussion:

## I.
## Double Jeopardy Based on Resentencing at Probation Revocation Hearing

A. <u>Sentence Enhancement Issue</u>.

    1. <u>Ward had no legitimate expectation of finality in the manner in which his sentence was structured</u>.

The confusion of the sentencing judge in this case stems from the fact that the First JS covered eight different causes encompassing 17 counts altogether. The sentencing in Cause 91-103 amounted to eight suspended sentences of 18 months, one for each count, and each to run concurrently with the others. Thus, the sentence in Cause 91-103 amounted to 18 months total, rather than twelve years as it would have done had the counts been sentenced consecutively. The judge then went on to specify that the sentence in each of the remaining seven causes was to run consecutively to the preceding cause.

In a handwritten note at the bottom of the First JS, the judge indicated that, "[t]he gross effect of this sentence [that is, the sentence on all eight causes] is 36 years and 364 days in prison suspended . . . ." (RP 103, at 64). In making this notation, the judge seems to have assumed mistakenly that the sentence for each count in Cause 91-103 was meant to run consecutively with the sentences on the other counts. Thus, when probation was revoked following Ward's probation violation, the

6

sentencing judge drew the twelve-year sentence of imprisonment from Cause 91-103, which he mistakenly thought carried a twelve-year sentence. The judge also noted in the Second JS that the sentences imposed in all causes other than 91-103 "shall remain the same" as in the First JS. (RP 484, at 29). When the judge realized his mistake, he filed the Third JS, clarifying that the twelve years was to be drawn from Causes 91-103, 91-326, 91-327, 91-328, 91-329, and part of 91-331. (RP 484, at 83-87). Since these cases were sentenced consecutively, these sentences amounted to twelve years in the aggregate and accounted for the period of imprisonment ordered upon probation revocation.

Ward argues that the Second JS, with its twelve-year period of imprisonment, constitutes an enhancement of his 18-month sentence in one cause only, 91-103, and this violates double jeopardy. Respondent on the other hand contends that the mistake was essentially a clerical error, as there was sufficient time in the aggregate sentence of the First JS to account for the twelve years of incarceration ordered in the Second JS. The Third JS, Respondent argues, merely clarified the causes from which the twelve year sentence was to be drawn, and neither the Second nor the Third JS increased the original sentence; thus, there was no double jeopardy violation. Respondent's position is the correct one; there was no enhancement of the sentence.

Among other things, the guarantee against double jeopardy protects against multiple punishments for the same offense. United States v. DiFrancesco, 449 U.S. 117, 129, 101 S. Ct. 426, 433 (1980). It is this protection that Ward claims was violated when he was sentenced to twelve years' imprisonment based on Cause 91-103, when the original suspended sentence in 91-103 was for 18 months only. Resolution of this issue turns on whether Ward had a legitimate expectation of finality in the manner in which the original sentence was structured. The Court finds that he did not.

The Supreme Court has noted that, "[h]istorically, the pronouncement of sentence has never carried the finality that attaches to an acquittal." There is clearly no double jeopardy protection against revocation of probation and later imposition of a sentence of imprisonment, since the defendant is aware at the original sentencing that a term of imprisonment may be imposed if he violates the conditions of his probation. Di Francesco, at 133, 137. Ward was aware that violation of his probation could result in modification of the terms and conditions of his suspended sentence. Plea and Disposition Agreement, July 2, 1991, CR 91-103-1, Exhibit D to Respondent's Answer. When a defendant violates the conditions of his probation, he has, "by his own hand, defeated his expectation of finality." Montoya v. New Mexico, 55 F.3d 1496, 1499 (10th Cir. 1995); see also, Lucero v. Kerby, 7 F.3d 1520, 1522 (10th Cir. 1993), in which the court noted that the "plea agreement also makes clear petitioner's awareness that he would be subject to future incarceration if he violated the conditions of probation." The language of the plea agreement signed by Ward was almost identical to that in Lucero.

In arguing that the court violated double jeopardy in identifying Cause 91-103 as the source for the twelve-year prison sentence, Ward contends in essence that he had a legitimate expectation of finality as to the overall structure of his original sentence, which was rather complex due to the number of charges and separate instances of criminal activity. Ward may have had a legitimate expectation that he would not be subjected to any longer term of incarceration than that which was imposed by the overall sentencing scheme in the First JS. However, this does not mean that he had the right to expect, if he violated his probation, that the sentences on each separate cause and each separate count would not be modified or rearranged within the overall scheme, to reflect the changed circumstances. This is similar to the "aggregate package" approach which most circuits follow in

8

cases charging vindictiveness in sentencing, to determine whether a later sentence, rendered after defendant has succeeded in reversing some but not all of his convictions on appeal, is actually harsher than the first. The logic of this approach is applicable to Ward's situation.

A second sentence following appeal is "more severe" than the first only when the total sentence after remand is longer than the total original sentence. United States v. Vontsteen, 950 F.2d 1086, 1092-93 (5th Cir. 1992). "[W]hen an appellate court affirms some counts and reverses others, it is open to the district court to resentence in order to effectuate the original sentencing intent." United States v. Shue, 825 F.2d 1111, 1113 (7th Cir. 1987).

> When a defendant is convicted of more than one count of a multicount indictment, the district court is likely to fashion a sentencing package in which sentences on individual counts are interdependent. When, on appeal, one or more counts of a multicount conviction are reversed and one or more counts are affirmed, the reversal of convictions underlying some, but not all, of the sentences renders the sentencing package ineffective in carrying out the district court's sentencing intent as to any one of the sentences on the affirmed convictions.

Kelly v. Neubert, 898 F.2d 15, 17 (3d Cir. 1990). In Kelly, the court increased the sentences on several individual counts following appeal and remand but at the same time reduced the aggregate sentence from 17 to 10 years. Since reversal "unbundled" the aggregate package, the circuit court held that rearranging the original sentencing package was a valid exercise of the court's sentencing authority and did not give rise to an inference of vindictiveness under North Carolina v. Pearce, 395 U.S. 711, 89 S. Ct. 2072 (1969).

Revocation of probation is not entirely analogous to remand following appeal; nevertheless, a defendant's action in violating the terms of his probation creates changed circumstances which must be taken into account by the sentencing court. Following probation violation, a defendant stands before the court in a different posture with a different set of attributes, pro and con, than he did at

the original sentencing. As noted above, "[w]hen a defendant is convicted of more than one count of a multicount indictment, the district court is likely to fashion a sentencing package in which sentences on individual counts are interdependent." Kelly, at 17. If thereafter the defendant violates probation, the sentence package may well be rendered ineffective to carry out the district court's original sentencing intent, and the court may "unbundle" the package and rearrange its contents without offending the double jeopardy clause.

        2. <u>It is immaterial whether Ward had served all, or nearly all, of his original sentence at the time he violated probation</u>.

In his reply brief, Ward requests for the first time an evidentiary hearing on the issue whether he had served "all or nearly all" of his sentence at the time of resentencing; if so, he argues, he had a legitimate expectation of finality in the original sentence. While the circuit expressed its preference for an evidentiary hearing, this suggestion was made because the circuit could not find the record source for the conclusion that petitioner's sentence was not impermissibly lengthened. As discussed above in Part I (A) (1), a careful review of the record establishes that there is no issue of fact as to whether Ward's sentence was impermissibly lengthened, and an evidentiary hearing on this issue is therefore not necessary. Further, there is no need for an evidentiary hearing on the issue of whether Ward had served all or nearly all of his sentence at the time of resentencing. Since there is ample evidence on the record to establish that Ward's sentence was not in fact enhanced in either the Second or Third JS, it immaterial how much of his sentence Ward had served at the time he committed probation violations and was resentenced.

It is not clear whether Ward is arguing that he had served nearly all of the original July 1, 1991 sentence at the time of the Second JS (November 2, 1992), or at the time of the Third JS (October 13, 1995). At one point in his brief, Ward states that he "should have completed most of the

10

sentence initially imposed prior to the court's entry of the <u>second</u> judgment which increased his sentence"; at another point, he refers to the issue of whether he "had completed service of the sentence initially imposed on him before the state court entered a <u>corrected</u> sentence increasing the period of incarceration . . . ." The reference to the "corrected" sentence seems mean the Third JS, not the Second. In any case, there is no need for an evidentiary hearing on this matter because, as noted above, the sentence was not increased at either the Second or Third JS; thus, no legitimate expectation of Ward's was violated, and it is immaterial how much of the sentence Ward had served at the time of probation revocation.

<blockquote>a. <u>Ward's sentence was not increased in the Second JS</u>.</blockquote>

Whether or not he had served all or nearly all of his sentence at the time of the Second JS, Ward could have had no expectation of finality in the original sentence, since he was still on probation and had acknowledged in the various plea agreements that his suspended sentences were subject to modification if he should violate probation. <u>See</u>, <u>e.g.</u>, RP 103, at 46:

> I fully understand that if, as part of this agreement, I am granted probation, a suspended sentence or a deferred sentence by the court, the terms and conditions thereof are subject to modification in the event that I violate any of the terms or conditions imposed.

He did in fact violate the conditions of his probation. It is immaterial whether Ward had served all or nearly all of the original 18 month sentence in 91-103 at the time of probation revocation, since the only reasonable expectation he could have had at that point is that the court could properly revoke the previous suspensions and require Ward to serve all of the time originally imposed.

Ward appears to be arguing that it was only Cause 91-103 that was changed in the Second JS, and since this occurred nearly 18 months after the original sentence in that cause, he had acquired a legitimate expectation of finality in the sentence on that particular cause and it therefore violated

11

double jeopardy to "lengthen" it to twelve years. Ward's argument overlooks the fact that the sentences in 91-326, 91-327, 91-328, 91-329, 91-330, 91-331, and 91-198 were consecutive to each other and consecutive to 91-103. (RP 103, at 57, 59-64). Thus, even if he had served "nearly all" of the eighteen months in Cause 91-103, there were seven other causes for which he was sentenced consecutively at the same time. The aggregate sentence for these causes was 22.5 years, and it is obvious that Ward's incarceration had barely scratched the surface of that amount of time. In addition, although it is undisputed that the court had mistakenly drawn all of the twelve-year sentence from Cause 91-103, this was appropriately corrected in the Third JS when Ward was credited for time already served on probation, and the remainder of the time was properly drawn from the remaining seven consecutive sentences. Thus, no sentence was lengthened.

### b. Ward's sentence was not increased in the Third JS.

The only change that occurred from the Second JS to the Third was the fact that the twelve-year sentence imposed for probation violation was drawn from seven different causes, rather than from Cause 91-103. Ward could have acquired no reasonable expectation of finality in having the twelve-year sentence drawn from 91-103, since the original sentence in that cause was only for 18 months. Furthermore, he challenged the sentences imposed in the First JS prior to the time of the Third JS (RP 484, at 38, 65; Exhibit Q to Respondent's Answer); thus, he could have acquired no expectation of finality in the original sentence. United States v. Welch, 928 F.2d 915, 916 (10th Cir. 1991).

If he is arguing that the Third JS violated his reasonable expectation that the sentence in Cause 91-103 would remain at the 18 months imposed in the First JS, there is nothing in the Third JS which violates this expectation. The judge kept the sentence in Cause 91-103 at 18 months and drew the

twelve years from 91-103, plus five other causes and a portion of a sixth. (RP 484, at 85-87). It is immaterial whether or not Ward had, by the time of the Third JS, served all or nearly all of the original sentence as to any one count or any one cause: "Given that sentencing is often a 'package deal,' we have noted that 'the appealing defendant cannot claim an expectation that the sentence on any particular count is irrevocably final.'" Welch, at 917.

To summarize: the issue of how much of his sentence Welch had served, either at the time of the Second or Third JS, is immaterial to whether his double jeopardy guarantee was violated; thus, there is no need for an evidentiary hearing on this issue.

B. Parole Issue.

Parole is mandatory and is controlled by statute; thus, failure to specifically mention it in a sentence is without effect. State v. Gaddy, 110 N.M. 120, 792 P.2d 1163 (Ct. App. 1990). Neither the judge's failure to include parole in the First JS, nor his later mention of it in the Second JS, violated the guarantee against double jeopardy.

In the First JS, the judge suspended sentence as to all of the charges and placed Ward on probation. Parole was not mentioned in the first JS, as to any of the charges. In the Second JS, the same judge revoked Ward's probation and sentenced him to a period of twelve years imprisonment, followed by two years of parole. (RP 484, at 28-29). As noted above, the judge incorrectly drew these twelve years from the sentence in Cause 91-103; however, he corrected this error in the Third JS to take the twelve years from that cause plus seven others, including Cause 91-331, a third degree felony. Ward contends that, in the Second JS, the trial judge impermissibly tacked the two-year parole period onto the original sentence and thus increased the sentence in violation of the double jeopardy clause.

13

The charge in Cause 91-331 was Residential Burglary in violation of N.M.S.A. (1978) § 30-16-3(A). (RP, v. CR-91-331-1, at 28). As a third degree felony, this crime carries a mandatory period of parole following incarceration. N.M.S.A. (1978) §§ 31-18-5(C), 31-21-10. "[P]arole periods following incarceration are mandatory by statute and are automatically included in any sentence." State v. Gaddy, 792 P.2d at 1166. It has been held that a sentence which does not include a statutorily mandated parole term is an illegal sentence, because it necessarily remains subject to modification. United States v. Rourke, 984 F.2d 1063, 1066 (10th Cir. 1992). A defendant cannot acquire a legitimate expectation of finality in such a sentence; therefore, a resentencing upon probation violation, which includes a previously omitted parole term, does not constitute double jeopardy. State v. Acuna, 103 N.M. 279, 705 P.2d 685, 686 (Ct. App. 1985); see also, Laycock v. New Mexico, 880 F.2d 1184, 1188 (10th Cir. 1989) (amending a sentence to add a mandatory parole term is proper under New Mexico law).

Thus, the judge in this case did not violate Ward's guarantee against double jeopardy when he included in the Second JS a period of parole mandated by state law, to be served following a sentence of incarceration which had been earlier suspended in favor of probation.

C. Consecutive / Concurrent Issue in Cause 92-484.

The reason Ward's probation was revoked was because he committed new offenses in 1992 during the probationary period. He pled guilty to Distribution of Marijuana to a Minor, and Felon in Possession. (RP 484, at 16). In sentencing for these two offenses, the judge stated that the sentence in Cause 92-484 was to be consecutive to the sentence for the earlier offenses as modified due to probation violation, with the sentence in Cause 92-484 to be served first. (RP 484, at 28-29). However, the judge did not specify in the Second JS whether the sentences on the two counts in

Cause 92-484 were to run consecutively or concurrently to each other, nor did he clarify this matter in the Third JS; he just never mentioned it.

At the sentencing hearing on November 2, 1992, the judge stated orally from the bench that the sentences on the two counts in Cause 92-484 were to run consecutively. (RP Tape 11-2-92(II), at 29.03). The sentence in Count I was three years, plus one additional year as enhancement as a habitual offender; the sentence in Count III was three years followed by one year of parole, for a total period of five and a half years incarceration. Both the judge and defense counsel referred throughout the hearing to an overall total of 17 and a half years (RP Tapes 11-2-92 (I) and (II)), which consists of the five and a half year term in Cause 92-484, plus the twelve years for probation violation. Thus, it is clear that the judge intended, and defense counsel conceded, that the sentences on these two counts would run consecutively; however, this intention was not expressed in writing in the Second JS of December 1992.

Ward claims that, since the written Judgment and Sentence included nothing explicit on this matter, the two sentences are presumed to run concurrently, and under New Mexico law the written sentence takes precedence over oral statements made by the judge at the time of sentencing. This argument is simply unsupported by the record. The discussion at sentencing indicates that the sentence was to be consecutive. The clerical omission from the JS can be corrected.

Furthermore, Ward made this same argument to the New Mexico courts, and they rejected it. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S. Ct. 475, 480 (1991); see also, Bowser v. Boggs, 20 F.3d 1060, 1064 (10th

15

Cir.1994). As Respondent correctly points out, there is no federal constitutional requirement that the written judgment should take precedence over the judge's oral statements made in the presence of the defendant at the time of sentencing. Indeed, federal constitutional law requires that the oral sentence take precedence over the later written sentence, on Sixth Amendment grounds:

> It is well established that a sentence orally imposed governs a conflicting, later-written sentence of the court . . . This rule is grounded in the Sixth Amendment which requires that a defendant be physically present at sentencing . . . When a judgment of conviction containing the sentence is officially entered of record, only members of the clerk's office are present . . . This cannot be what Congress meant in Rule 35(c) by "imposition of sentence" in light of the Sixth Amendment. We hold, therefore, that sentence is imposed upon a criminal defendant, for purposes of Rule 35(c), when the court orally pronounces sentence from the bench. See United States v. Hicks, 997 F.2d 594, 597 (9th Cir.1993) ("The only sentence that is legally cognizable is the actual oral pronouncement in the presence of the defendant.").

United States v. Townsend, 33 F.3d 1230, 1231 (10th Cir. 1994).

Double jeopardy may be implicated where a court attempts to vacate a concurrent sentence and make it consecutive after the time for correction has expired, but that is not what happened in this case. Rather, the judge, in his original oral sentence from the bench, stated that the sentences run consecutively, for a total of five and a half years. The later written sentence does not conflict with this statement; it just does not refer to it one way or the other. Although a written sentence may be used to clarify an ambiguous oral sentence by providing evidence of what was said from the bench, United States v. Earley, 816 F.2d 1428, 1431 (10th Cir. 1987), there is no need to use the written sentence for this purpose in this case, as the statement from the bench was unambiguous. Federal courts adopt a presumption that multiple federal sentences imposed at the same time will run concurrently absent an express statement to the contrary (Earley, at 1431). However, that principle

16

would not aid Ward even if it were to be applied herein, as it is clear in this case that the judge provided an express statement in his oral sentence to the contrary. The sentences were to be consecutive. (RP, Tape 11-2-92 (II), at 29.03).

## II.
### Request for an Evidentiary Hearing

Petitioner requests an evidentiary hearing in this matter and states that the Tenth Circuit ordered that such a hearing be held. This is not strictly correct. The Tenth Circuit said in its Order and Judgment that, because it was unsure of the record source of th[e] finding" that Ward's sentences were not impermissibly lengthened, "[w]e would prefer that the federal district court conduct an evidentiary hearing to determine the exact parameters of the sentences imposed by the state district court."

The Tenth Circuit also noted in Lucero v. Kerby, at 1522, that, "A habeas petitioner is entitled to a hearing if he alleges facts, which if proved, would entitle him to relief, and he did not receive a full and fair hearing in the state court." Under this test, a hearing is not necessary in this case. The "exact parameters" of the sentences are clear from the record, and there is no other factual issue for determination. Moreover, this court, on this review, has delineated the record references that substantiate the court's findings.

In his initial brief, Ward did not specify any disputed factual issue necessitating an evidentiary hearing; he merely asserted generally that factual issues exist in this case and argued that, "unless the state court record conclusively shows that Mr. Ward is not entitled to relief, an evidentiary hearing must be held." (Petitioner's Memorandum Brief, at 13). Although the state court judge was initially confused, the facts in this case are relatively straightforward as to the judge's initial error and later correction. The record is clear as to what occurred, the sequence in which it occurred, and the

circumstances prompting the three Judgments and Sentences in Ward's cases. The only material dispute in this case involves the legal effect of these facts.

In his reply brief, Ward raised for the first time the argument that an evidentiary hearing is necessary in order to determine whether he had served "all or nearly all" of the sentence imposed in the First JS at the time the state court entered the Third JS. For the reasons discussed above, this issue is immaterial to this case and thus does not necessitate an evidentiary hearing. Petitioner apparently harbors a sincere and deeply-felt belief that he is entitled to a hearing in this case. However, a request for a hearing will not be granted unless there are unresolved factual matters that require resolution. Finding no such factual dispute, the court denies Ward's request.

## Recommended Disposition

That the petition be denied and the case dismissed with prejudice.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
United States Magistrate Judge

ATTORNEY FOR PETITIONER:
Ann Steinmetz, Esq.

ATTORNEY FOR RESPONDENTS:
William McEuen, Esq.